# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 17, 2009

Charles R. Fulbruge III
Clerk

No. 08-30338

EDWARD E PRICE

Petitioner - Appellant

v.

BURL CAIN, WARDEN, LOUISIANA
STATE PENITENTIARY

Respondent - Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before JOLLY, DAVIS, and DeMOSS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Edward Price, an African-American, was tried and convicted by an all-white jury of aggravated rape and sentenced to life in prison. After exhausting his remedies in state court, Price filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Louisiana. That petition claimed that the state trial court erred when it overruled Price's *Batson* challenge on the ground that Price did not make a prima facie showing that the State had exercised its peremptory challenges on the basis of race. The district court denied Price's claim and dismissed Price's petition. Price appeals that dismissal.

There is no dispute that the jury empaneled in Price's case was all-white. That jury was selected from a 54-member venire, of which 16 members were African-American. The State used six of its twelve peremptory challenges to strike African-Americans, three of whom the State had unsuccessfully challenged for cause. Price used one peremptory challenge to strike an African-American. After the jury was empaneled, but before the panel was sworn, Price raised a *Batson* objection:

Price:    I think that we would interpose at this point a *Batson* challenge because the State, I think this panel is going to be exclusively white.

Court:    . . . Make your case. Is that it?

Price:    Yeah, that's it. I mean –

Court:    – You better make it better than that. . . . You make a prima facie case?

Price:    Right.

Court:    So, the fact that the panel . . . you think you've stated enough by just saying they're all white?

The trial court concluded that the mere statement that the jury was all-white was insufficient to make a prima facie showing to support a *Batson* challenge. *Louisiana v. Price*, 917 So.2d 1201, 1210 (La. Ct. App. 2005) (recounting colloquy). Because the trial court ruled that Price failed to make a prima facie case, and thus failed *Batson*'s first step, it did not proceed to the second step, which asks the State to articulate race-neutral reasons for its peremptory challenges. Price's appeal therefore requires us to decide whether a prima facie case is made, and *Batson*'s first step is satisfied, when the prosecution's use of peremptory challenges to strike six African-American veniremen results in an all-white jury.

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), this court may not grant relief on a claim adjudicated by a state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). "A state court's decision is deemed 'contrary to' clearly established federal law if it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Murphy v. Dretke*, 416 F.3d 427, 431-32 (5th Cir. 2005) (quoting *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "A state court's decision constitutes an unreasonable application of clearly established federal law if it is objectively unreasonable." *Id.* (quoting *Pondexter v. Dretke*, 346 F.3d 142, 146 (5th Cir. 2003) (citing *Williams*, 529 U.S. at 409)).

Under *Batson v. Kentucky*, 476 U.S. 79 (1986), claims of racial discrimination in jury selection are analyzed in a three-step process. *Id.* 96-98. First, a defendant must make a prima facie showing that the prosecution has exercised peremptory challenges on the basis of race. *Id.* at 93-94, 96-97. Second, if a prima facie showing is made, the burden shifts to the prosecution to articulate a race-neutral reason for the peremptory challenge at issue. *Id.* at 94, 97-98. Third, the trial court must determine whether the defendant has proved purposeful discrimination. *Id.* at 98.

This appeal is concerned only with step one, whether a prima facie showing was made. *Batson* explained that to establish a prima facie case, a defendant: (1) must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove members of

that group from the venire; (2) is entitled to rely on the fact "that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate'"; and (3) must show that these facts and circumstances raise an inference that the prosecutor exercised peremptory challenges on the basis of race. *Id.* at 96 (quoting *Avery v. Georgia*, 345 U.S. 559, 562 (1953)).

The Supreme Court recently stressed in *Johnson v. California*, 545 U.S. 162 (2005), that *Batson* "spoke of methods by which prima facie cases could be proved *in permissive terms*." *Id.* at 169 n.5 (emphasis added). We read the Supreme Court's use of the word *permissive* to describe the method by which prima facie cases may be proved to mean *not restrictive*. In *Johnson*, the Supreme Court held that California courts could not require a defendant to show at step one that "it is more likely than not" that peremptory challenges, if unexplained, were based on impermissible group bias. *Id.* at 171-72. The Supreme Court explained:

> We did not intend the first step to be so onerous that a defendant would have to persuade the judge – on the basis of all the facts, some of which are impossible for the defendant to know with certainty – that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.

*Id.* at 170.

In other words, *Batson* intended for a prima facie case to be simple and without frills. The opinion was "designed to produce actual answers to suspicions and inferences." *Id.* at 172. Actual answers are preferable to "needless and imperfect speculation when a direct answer can be obtained by asking a simple question." *Id.* (citations omitted). *Batson* thus seeks to promote

"'prompt rulings on objections to peremptory challenges without substantial disruption of the jury selection process.'" *Id.* (quoting *Hernandez v. New York*, 500 U.S. 352, 358-59 (1991)).

To make a prima facie case, Price needed to show only that the facts and circumstances of his case gave rise to an inference that the State exercised peremptory challenges on the basis of race. This was a light burden, and Price carried it. Price, an African-American man, was tried for the rape of a Chinese-American woman. The State used six of its twelve peremptory challenges to strike African-Americans from the venire, and the resulting jury was all-white. Under *Batson*'s "permissive terms," these facts and circumstances were "sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Johnson*, 545 U.S. at 170.

In the light of the foregoing, we remand this case to the district court for a hearing to determine whether a *Batson* violation occurred. If the district court determines that the jury that convicted Price was selected in violation of *Batson*, it will grant habeas relief, ordering the state to either retry Price within a reasonable time or to release him; otherwise it will deny relief and dismiss the petition. The judgment of the district court is therefore

REVERSED, VACATED, and REMANDED.